UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY PANECKI,

|  |  |
|---|---|
| | CASE NO. 15-13005 |
| *Plaintiff*, | DISTRICT JUDGE DAVID M. LAWSON |
| *v.* | MAGISTRATE JUDGE PATRICIA T. MORRIS |

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 11, 12)

### I.        RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Panecki is not disabled. Accordingly, **IT IS RECOMMENDED** that Panecki's Motion for Summary Judgment (Doc. 11) be **GRANTED**, that the Commissioner's Motion for Summary Judgment (Doc. 12) be **DENIED**, and that this case be **REMANDED FOR BENEFITS**.

### II.        REPORT

#### A.        Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claims for a period of disability and Disability Insurance Benefits

("DIB") program of Title II, 42 U.S.C. § 401 *et seq*. (Doc. 3; Tr. 1-3). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 12).

Plaintiff Timothy Panecki was fifty-nine years old as of May 22, 2014, the date of the ALJ rendered her decision. (Tr. 39, 47, 151); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987) ("[T]he claimant's age as of the time of the decision governs in applying the regulations."). His application for benefits was initially denied on March 20, 2013. (Tr. 95-105). Panecki requested a hearing before an Administrative Law Judge ("ALJ"), which took place before ALJ Patricia McKay on April 9, 2014. (Tr. 51-92). Panecki, represented by attorney J.B. Bieske, testified, as did vocational expert ("VE") Kelly Stroker. (*Id.*). On May 22, 2014, the ALJ issued a written decision in which she found Panecki not disabled. (Tr. 37-47). On July 7, 2015, the Appeals Council denied review. (Tr. 1-3). Panecki filed for judicial review of that final decision on August 24, 2015. (Doc. 1).

**B.    Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

3

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual

4

functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least 18 years old and has a disability that began before age 22 (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Panecki not disabled under the Act. (Tr. 47). The ALJ found at Step One that Panecki had not engaged in substantial gainful activity following the alleged onset date, November 21, 2012. (Tr. 39). At Step Two, the ALJ concluded that Panecki had the following severe impairments: "multi-level degenerative disc disease with cervical disc herniations, degenerative joint disease of the bilateral knees with a remote history of bilateral anterior cruciate ligament (ACL) reconstructions, and obesity." (*Id.*). At Step Three, the ALJ found that Panecki's combination of impairments did not meet or equal one of the listed impairments. (Tr. 41). The ALJ then found that Panecki had the residual functional capacity ("RFC") to perform light work, but with nonexertional limitations as follows: "claimant can occasionally

climb stairs, crouch, crawl, stoop, kneel, or bend. He needs to avoid working around dangerous moving machinery. He should not climb ladders, ropes, or scaffolds." (Tr. 41-45). At Step Four, the ALJ found that Panecki could not perform his past relevant work as a sales representative in the printing industry. (Tr. 45). At Step Five, the ALJ concluded that Panecki retained the ability to perform work which exists in significant numbers in the national economy. (Tr. 45-46).

### E.    Administrative Record

#### 1.    Medical Evidence

The Court has thoroughly reviewed Panecki's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.    Application Reports and Administrative Hearing

##### a.    Panecki's Function Report

Panecki completed a function report on February 25, 2013, in which he asserted that he had difficulty "walking long distances," experienced pain when standing for longer than one hour, was "almost completely unable to climb or walk down stairs," was limited in his ability to lift, and had a "loss of function" on his left side when lifting his hands above his head. (Tr. 192). In terms of his daily activities, he wrote "does not apply." (Tr. 193). He experienced difficulty sleeping due to pain in his legs, back, and neck. (*Id.*). He reported problems bending over, standing, and problems with his left side going numb. (*Id.*). Panecki made sandwiches and frozen meals, but had to take breaks

6

"from time to time" when cooking. (Tr. 194). He performed simple household chores, and did "1-chore per day." (*Id*.). He required encouragement to cut the grass, wash dishes, and do laundry, though it is unclear who Panecki sought that encouragement from, as he also wrote that he lived alone. (Tr. 192, 194). He could handle money normally, but reported that he could not "pay bills" because he had "no income." (Tr. 195).

Panecki reported going outside once or twice daily, and he could drive a car. (Tr. 195). He shopped in stores for food twice monthly for about thirty minutes per trip. (*Id*.). His hobbies included watching television; his ability to watch television was not impacted by his ailments. (Tr. 196). He visited others or talked on the phone twice monthly. (*Id*.). He got along well with others. (Tr. 197). He had no difficulty paying attention, following instructions, getting along with authority figures, or handling stress, and had no unusual behaviors or fears. (Tr. 197-98).

Panecki wrote that he could not use stairs without holding onto a railing, and could walk only 200 yards at a time, with a five minute break between jaunts. (Tr. 197). He did not use an assistive device to walk. (Tr. 198). Panecki's medications did not cause any side effects. (Tr. 199).

### b.   Panecki's Testimony at the Administrative Hearing

At the April 9, 2014, hearing before the ALJ, Panecki testified that he previously worked as a sales representative for a printing company. (Tr. 61-62). Panecki stated that he became disabled as he "started losing function in [his] body and pain in [his] neck . . .

[a]nd just started falling apart." (Tr. 65). He drove once or twice weekly, and drove himself to the hearing before the ALJ. (Tr. 66). Panecki said that his daily activities were limited to watching television, eating, and sitting. (*Id*.). He did his own laundry "sometimes," and his son performed that chore on other occasions. (Tr. 67). He read outdoor magazines occasionally, and did not use a computer. (*Id*.). He previously hunted, fished, and performed other outdoor sports, but gave them up due to his deteriorating physical condition. (Tr. 68).

Panecki stated that the biggest impediment to working was neck pain, and was under consideration for a spinal fusion and decompression, but was holding off due to financial limitations. (Tr. 69). The pain radiated from his neck into his shoulders, arms, and hands. (Tr. 70). Panecki stated that this pain negatively impacted his sleep, and caused him to sometimes fall down after sitting up. (*Id*.). Panecki also referenced "los[ing] function of [his] left side." (Tr. 71). However, Panecki did not make use of a cane or other assistive walking device. (*Id*.). In the home, he would "feel [a fall] coming on" and move quickly to a chair for stability. (*Id*.).

As to back pain, Panecki asserted that his back sometimes "pulls out," meaning that he experiences spasms, which cause him to be "bed ridden," such that he is "not able . . . to get out of bed." (Tr. 72). No surgery had been recommended for Panecki's back pain. (*Id*.). Panecki claimed that he experienced bone deterioration and arthritis of the knees; he had been given cortisone injections to relieve pain. (Tr. 72-73). Panecki also complained of some depression, for which he was taking Zoloft. (Tr. 73).

8

As to why he could not return to sales work, Panecki stated that he was "not very good at" computers, had difficulty keeping his head in one position for more than fifteen minutes, was unsure whether he might fall, and because his doctor "doesn't want [him] to do pretty much anything." (Tr. 76). Panecki also noted that he read infrequently, generally only a few paragraphs at a time. (Tr. 79).

As to his hands, Panecki stated that he had difficulty grasping certain objects, particularly heavy objects. (Tr. 77). Panecki also said that he would be unable to type as part of a job, because he "can't type" and types "one finger at a time," a limitation which predated his illnesses. (Tr. 77-78).

Finally, Panecki noted that his home was in foreclosure, and that his savings had been depleted. (Tr. 81).

### c.       The VE's Testimony at the Administrative Hearing

The ALJ then called upon the services of a VE to determine Panecki's ability to perform work. (Tr. 81). The VE found that Panecki's past work as a sales representative in the printing industry was skilled work, performed at the medium level of exertion. (Tr. 83). The VE found that the sales and customer service skills Panecki obtained through this work would transfer to sales positions at the semi-skilled level, in particular work as a telemarketer. (*Id*.). The VE found that converting these skills to use in telemarketing would require a "significant" adjustment over an "extended period of time to learn anything that's not printing," ranging from thirty to sixty days. (Tr. 83).

9

The ALJ asked the VE to imagine a hypothetical worker with Panecki's age, education, and experience, but who was limited to the light range of work, and who could perform only occasional climbing, crouching, crawling, kneeling, stooping, and bending, who needed to avoid working around dangerous moving machinery, and who could not climb ladders, ropes, or scaffolds. (Tr. 84). The VE found that such a worker could not return to Panecki's past relevant work, because the dangerous machinery restriction would preclude the worker's ability to drive a car, which was required by Panecki's work as a printing sales representative. (*Id.*). However, the VE found that such a worker could, with significant adjustment, perform work as a telemarketer; there were 5,000 such jobs in Michigan. (Tr. 85). The VE testified that telemarketers are permitted to stand between phone calls, but are otherwise "pretty much tied" to their chair. (*Id.*). The VE also noted that telemarketers may be required to keep their head in a static position for upwards of fifteen minutes at a time. (Tr. 86). The VE confirmed that taking four unscheduled breaks per day would be work-preclusive. (Tr. 87). Likewise, a worker absent from the job more than twice per month would be precluded from work. (*Id.*). If Panecki's testimony were credited, the VE found that his alleged loss of function on his left side and difficulty keeping his neck static would be work-preclusive. (Tr. 88). Panecki's attorney asked whether a restriction to occasional use of the hands would preclude work as a telemarketer; the VE confirmed that it would. (Tr. 90).

10

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and

the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. §

404.1527(c)(2). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL

374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

> (i)   [D]aily activities;
> (ii)  The location, duration, frequency, and intensity of . . . pain;
> (iii) Precipitating and aggravating factors;
> (iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
> (v)   Treatment, other than medication, . . . received for relief of . . . pain;
> (vi)  Any measures . . . used to relieve . . . pain.

14

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.   Analysis

Panecki argues that the ALJ erred in the following ways: 1) Improperly concluding that Panecki could transfer his skills to work as a telemarketer; 2) Improperly evaluating Panecki's obesity and mental functioning; 3) Failing to provide a narrative discussion of her findings. (Doc. 11 at 11-19). These arguments will be addressed in turn.

### 1.    *The ALJ's Skill Transferability Finding Was Erroneously Made*

Panecki first argues that the ALJ erred by concluding that the skills he developed as a sales representative in the printing industry were transferable to work as a telemarketer, thus rendering him not disabled. (Doc. 11 at 12-15). Panecki references the Medical Vocational Guidelines ("Grids"), which provide that a claimant will be found disabled if he is i) of advanced age (*i.e.* 55 or older), ii) limited to sedentary work, and iii) has no transferable skills, or skills which could only be transferred via "very little, if any, vocational adjustment." 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 201.00(f). Panecki thus argues that the sedentary grid should have been applied, and a finding of disabled should have resulted.

The ALJ's decision is indeed based on her finding that Panecki could perform work as a telemarketer, a sedentary position. (Tr. 46). Yet the ALJ found that Panecki was limited to a restricted range of light work, not sedentary work. (Tr. 41). Thus 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 202.00(c) applies, which addresses claimants who are restricted to light work by their RFC finding. Courts within this circuit have consistently found that the VE's findings regarding the availability of jobs does not alter the ALJ's RFC finding, and thus does not alter which of the Grids should be applied. In *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 36 (6th Cir. 2010) the Sixth Circuit found no conflict between an RFC finding of light work and a VE's testimony that the claimant could perform sedentary work. The court noted that the "RFC is based on the claimant's particular disabilities, an inquiry wholly independent from what jobs are available in the

16

regional and national economy," and that the "VE does not testify as to what the claimant is physically capable of doing, but rather as to what jobs are available, given the claimant's physical capabilities. Thus, in a step-five analysis, the VE's testimony depends upon the RFC and not the other way around." *Id*. Likewise, "[e]ven if the only jobs actually available in the economy for a claimant with a light RFC happen to be sedentary, it does not change the fact the claimant is still capable of performing light work." *Salas v. Comm'r of Soc. Sec.*, No. 1:11 CV 1511, 2012 WL 3283415, at *7 (N.D. Ohio July 26, 2012), report and recommendation adopted, No. 1:11-CV-1511, 2012 WL 3278913 (N.D. Ohio Aug. 10, 2012). *See also Cotton v. Comm'r of Soc. Sec.,* No. 1:14-CV-900, 2016 WL 80667, at *4 (W.D. Mich. Jan. 7, 2016) ("The VE's testimony that plaintiff could perform sedentary jobs has no bearing on the ALJ's decision at step four that plaintiff had the RFC to perform light work.").

In her decision, the ALJ found that "[t]he vocational expert acknowledged there could be a significant learning adjustment . . . due to changes in industries. However, given the claimant's age, this is not significant to the question of the claimant's disability. See Sec. 202.00(f)." (Tr. 47). That subsection provides that "(f) For a finding of transferability of skills to light work for persons of advanced age who are closely approaching retirement age (age 60 or older), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 202.00(f). The ALJ was correct in concluding that

17

because of his age at the time of the decision, Panecki was not "closely approaching retirement age," and was thus not disabled under §202.00(f).

However, the ALJ's analysis should not have ended here. Because the ALJ found that Panecki was capable of performing light work and was of advanced age, 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 202.00(c) applies to his claim under the Grids. That statute provides that

> for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity . . . the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled.

*Id*. Panecki was fifty-nine years and three months old as of the date of the ALJ's decision, and was thus of advanced age. (Tr. 39, 47, 151). The ALJ found that he was capable of performing light work. (Tr. 41). While the VE found that Panecki had customer service and sales skills which would be transferable to other work, he concluded that these skills were not readily transferable, but rather would require a "significant" adjustment over an "extended period of time to learn anything that's not printing," ranging from thirty to sixty days. (Tr. 83). Because Panecki is an individual of advanced age, capable of performing light work, but whose skills are not readily transferable to a significant range of semi-skilled or skilled work, he ought to have been found disabled under 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 202.00(c).

18

The Commissioner touches on this argument in her brief, but her analysis is incomplete. The Commissioner argues that because Panecki had not yet reached the age of sixty as of the date of the ALJ's decision, and because Panecki had the RFC to perform light work, the ALJ was permitted to "rely[] on jobs that require some vocational adjustment." (Doc. 12 at 17-18). The Commissioner is quite right that Panecki, due to his age, did not benefit from the portion of the regulations providing that persons closely approaching retirement age (*i.e.* persons sixty and older) are disabled unless their skills transfer with "very little, if any, vocational adjustment." (*Id.* at 18) (quoting 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 201.00). Yet the Commissioner fails to note that persons of advanced age who are limited to light work must not simply have *transferable* skills, they must have "*readily transferable*" skills to be found not disabled under the Grids. 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 202.00(c) (emphasis supplied). Panecki's skills are not readily transferable, but rather would require, as the ALJ characterized it a "significant learning adjustment," and due to his age and his exertional limitations, he should be found disabled. (Tr. 45).

While the Court could recommend remand for benefits without further analysis, Panecki's remaining arguments will be considered for the sake of completeness and in case the above reasoning is not adopted.

### 2.    *The ALJ Properly Evaluated Panecki's Obesity and Mental Functioning*

Panecki next argues that the ALJ's RFC finding does not appropriately encompass all of his physical and mental limitations. (Doc. 11 at 16-19). Panecki lists obesity and

19

concentration as limitations which were not properly incorporated into the RFC. (Doc. 11 at 17-18). Panecki asserts that the ALJ should have "explain[ed] how Mr. Panecki's obesity was reflected in the RFC, where such obesity would be expected to cause fatigue and accompanying issues." (*Id.*). The ALJ properly noted that she was required to consider the impact of obesity, and stated that she "fully considered obesity in the context of the overall record evidence in making [her] decision." (Tr. 41). She also noted that Panecki's physicians did not express "any concerns" about his obesity. (Tr. 45).

"'Social Security Ruling 02–01p does not mandate a particular mode of analysis,' but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (quoting *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411–12 (6th Cir. 2006)). Nevertheless, the claimant bears the burden of demonstrating how obesity would limit his or her abilities in a manner not encompassed by the ALJ's RFC finding. *See Boles v. Colvin*, No. 2:12-CV-00079, 2015 WL 4506174, at *2 (M.D. Tenn. July 23, 2015); *Boley v. Comm'r of Soc. Sec.*, No. 11-CV-15707, 2013 WL 1090531, at *4 (E.D. Mich. Mar. 15, 2013). Panecki presents no detail as to how his obesity would limit his abilities beyond that provided for in the ALJ's RFC. Numerous courts have refused to remand where an ALJ stated that he or she "fully considered obesity," and where the claimant failed to identify specific limitations caused by obesity not incorporated into the ALJ's RFC finding. *See, e.g., Osing v. Colvin*, No. 14-CV-3326, 2016 WL 1060184, at *12 (C.D. Ill. Mar. 15, 2016); *Rix v. Colvin*, No. CV 14-5733

20

(PGS), 2016 WL 199419, at *10 (D. N.J. Jan. 15, 2016); *Davis v. Comm'r, Soc. Sec. Admin.*, No. SAG-13-3761, 2014 WL 7014500, at *3 (D. Md. Dec. 9, 2014); *Burgess v. Colvin*, No. 2:12-CV-252-WGH-WTL, 2013 WL 1619551, at *6 (S.D. Ind. Apr. 15, 2013); *Palisay v. Comm'r of Soc. Sec.*, No. CIV.A. 11-4857, 2012 WL 3201428, at *14 (D. N.J. Aug. 2, 2012).

A few courts have concluded that an ALJ's pledge that he or she "fully considered obesity," without more, is insufficient to satisfy SSR 02-01p, because such a cursory analysis prevents meaningful judicial review. *See Alicea v. Comm'r of Soc. Sec.*, No. 13-CV-7302, 2014 WL 6978457, at *6 (D. N.J. Dec. 8, 2014); *Padilla v. Astrue*, No. 10–CV–4968, 2011 WL 6303248, at *7 (D. N.J. Dec.15, 2011). In this case, the ALJ also found that no physician express "any concerns about" Panecki's obesity. (Tr. 45). While this analysis is fairly minimal, it distinguishes the ALJ's decision in this case from those in *Alicea* and *Padilla*, and is sufficient to satisfy the ALJ's obligations. The ALJ cannot be faulted for choosing to spend little time analyzing a claimant's obesity where the claimant and his physicians little remarked on the limitations posed by that ailment. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004) ("The absence of further elaboration on the issue of obesity likely stems from the fact that [the claimant] failed to present evidence of any functional limitations resulting specifically from her obesity.").

As to concentration issues, Panecki states that "[t]he harmfulness of this error of failure to include limitations . . . [including] fatigue and reduced mental function was

established by the VE's testimony that a hypothetical limitation that included being off-task 20 percent of the workday would be work preclusive." (Doc. 11 at 18-19) (quotation omitted). Panecki has failed to identify any records supporting this proposed restriction. The few medical records referencing Panecki's mental health suggest that he suffered from some depression and anxiety. (Tr. 231, 256-57, 259-61). However, they also indicate that Panecki's symptoms did not "interfer[e] with his functioning" (Tr. 259), or "prevent him from doing work related activities or following two or three step directions" (Tr. 261), that his medication was effective at treating his mental issues (Tr. 259), and that his attitude, behavior, mood, affect, mental activity, memory, general knowledge, ability to perform calculations, judgment, abstract thinking, and thought content were nominal. (Tr. 260).

Based on Panecki's limited mental health records, the ALJ correctly concluded that there was no evidence that Panecki suffered from significant concentration issues. (Tr. 40). The ALJ found no limitation in the areas of activities of daily living; social functioning; concentration, persistence, or pace; nor any episodes of decompensation. (*Id.*). In light of Panecki's record of mild mental ailments, the ALJ properly refused to include in the RFC finding a limitation that Panecki would be off task twenty percent of the time.

### 3.    *The ALJ Decision Properly Comports with SSR 96-8p's Narrative Discussion Requirement*

Panecki also argues that the ALJ's decision is deficient because it does not "include a narrative discussion describing how the evidence supports each conclusion" or "set forth a logical explanation of the effects" of his symptoms and how they impact his ability to work. (Doc. 11 at 18) (quoting SSR 96-8p). Panecki appears to argue that the ALJ failed to provide a narrative explanation only with relation to his obesity-related impairments. (*Id*.). Even if the court were to apply this argument to the ALJ's discussion of Panecki's other impairments, remand would not be appropriate on this ground.

SSR 96-8p provides that an ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence," and describing "the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96–8p, 1996 WL 374184, at *7. Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." *Id*. To meet these demands, the ALJ should offer "a thorough discussion" of the evidence and "a logical explanation" of the symptoms' effects on the individual's capacity to work. *Id*. These requirements preclude an ALJ from simply stating that his conclusion "was 'based on the medical evidence.'" *Payne v. Comm'r Soc. Sec.*, 402 F. App'x 109, 117–18 (6th Cir. 2010) (quoting the district court's opinion and finding the

23

narrative sufficient because the ALJ did more than say the opinion was supported by evidence).

Panecki does not detail specifically how the ALJ's decision runs afoul of SSR 96-8p, and a review of the ALJ's decision contradicts Panecki's assessment. The ALJ's decision is in actuality rather thorough in its consideration of Panecki's mental functioning; his eligibility for Listings 1.02 and 1.04; his back, neck, and leg pain; the condition of his spine; and his treatment sessions with various consultative and treating physicians and therapists. (Tr. 40-45). The ALJ considered the weight that should be given to each physician's opinion, and distinguished between physicians who rendered opinions and those who merely rendered objective findings. (Tr. 43-45). While the ALJ's discussion of obesity is somewhat terse, as discussed above, it is sufficient to satisfy the ALJ's obligations. Short of evaluating each of Panecki's treatment records individually, it is difficult to see how the ALJ's discussion could have been more explanatory or thorough.

While the ALJ's analysis of the medical record is persuasive and thorough, her misapplication of the Grids is fatal to her decision and remand for benefits is the appropriate remedy. Due to his advanced age, limitation to light work, and the slow transfer of his skills, 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 202.00(c) provides that Panecki is disabled.

24

### H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Panecki's Motion for Summary Judgment (Doc. 11) be **GRANTED**, the Commissioner's Motion (Doc. 12) be **DENIED**, and that this case be **REMANDED FOR BENEFITS**.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party

25

may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 8, 2016                              S/ PATRICIA T. MORRIS
                                                Patricia T. Morris
                                                United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.


Date: June 8, 2016                              By s/Kristen Krawczyk
                                                Case Manager

26